Appeal of CHAMBERLAIN MEDICINE CO.     Docket No. 181.

The 25 per cent limitation provision of section 326 (a) (4) of the Revenue Act of 1918 is only applicable after proof that the intangible assets in question were paid in for stock or shares.

Submitted February 5, 1925; decided February 25, 1925.

*Walter W. Stevens, Esq.*, for the taxpayer.
*John D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

The taxpayer appeals from a deficiency of less than $10,000 alleged to be based upon the misapplication by the Commissioner of the limitation of 25 per cent prescribed by section 326 of the Revenue Act of 1918 upon intangibles included in invested capital. The taxpayer is one of a group of affiliated corporations with an alleged total outstanding capital stock of $625,300, and contends that the percentage limitation should be computed on this total stock of the group. The deficiency, however, was computed on the basis of the outstanding stock of the dominant corporation amounting to $300,000, and at the hearing and in brief the counsel for the Commissioner urges that upon the evidence no intangible value whatever should be included in invested capital, and hence that the deficiency should be increased.

FINDINGS OF FACT.

In 1872 the partnership of Owen and Chamberlain was formed to sell patent medicines. It carried on with changes in personnel until 1892, when the business was incorporated as the Chamberlain Medicine Co., of Iowa. The name Chamberlain was applied to the products and was extensively exploited.

The articles of incorporation are signed by D. S. Chamberlain and Lowell Chamberlain, and were executed July 23, 1892, the date upon which the corporate business began. They contained the following articles, among others:

Art. 4: The object of this incorporation shall be the manufacture, and sale of medicines, and to purchase, own and carry on, the business now and heretofore carried on by Chamberlain & Co., together with all patents, copy rights, good will, or trade-marks, pertaining to said business, or, now held in the name of any member of said firm.

Art. 5: The capital stock of this incorporation shall be—one hundred and sixty thousand dollars, to be divided into shares of one hundred dollars, each, which may be increased by the unanimous consent of the stockholders. And, the stock may be transferred by a surrender of the certificates, and a re-issue to the assignee upon the books of the Company.

Art. 6: Upon consideration of the transfer to the body corporate, by the firm of Chamberlain & Co., and each member of said firm, of all the property and assets of said firm, and the good will of said business, together with all letters patent, copy rights or trade marks, under which said firm has heretofore manufactured and sold medicines, it is hereby stipulated that the Company shall issue the said sum of one hundred and sixty thousand dollars of stock, as fully paid up stock, in an equal moiety to each member of said firm, and shall assume all debts and liabilities of said firm.

There is in the record no opening balance sheet of the corporation on July 23, 1892. The balance sheet of December 31, 1892, is as follows:

| Assets. | | Liabilities. | |
|---|---|---|---|
| Cash and deposit | $6,629.36 | Bills payable | $24,949.85 |
| Bills receivable | 169,354.59 | Capital stock | 160,000.00 |
| Merchandise stock | 20,111.40 | Surplus | 28,800.43 |
| Supplies | 2,257.20 | | |
| Printing outfit | 11,927.12 | | |
| Furniture and fixtures | 3,470.61 | | |
| | 213,750.28 | | 213,750.28 |

On March 9, 1893, a special meeting of the stockholders was held at which all the stock was represented: Davis S. Chamberlain, 799 shares; Lowell Chamberlain, 799 shares; and Izanna L. Chamberlain, 2 shares. An amendment was adopted of Article 5, increasing the capital stock so that it would be $300,000, composed of $150,000 of preferred and $150,000 of common, to be issued in exchange for the stock then outstanding in the ratio of 1 share each of preferred and common for $1\frac{1}{15}$ shares of outstanding stock. The balance sheet of the corporation on December 31, 1893, is as follows:

| Assets. | | Liabilities. | |
|---|---|---|---|
| Cash and deposit | $15,293.98 | Bills payable | $25,885.72 |
| Bills receivable | 165,969.10 | Capital stock | 300,000.00 |
| Merchandise stock | 24,265.66 | Surplus | 9,658.84 |
| Supplies | 3,398.68 | | |
| Printing outfit | 11,780.60 | | |
| Furniture and fixtures | 3,636.97 | | |
| Patents, copyright, trademark, and good will | 111,199.57 | | |
| | 335,544.56 | | 335,544.56 |

The business was conducted all over the world. For convenience of operation and management, and to effect economies in transportation and distribution, separate corporations were from time to time organized under the laws of Iowa, each to cover the business of a foreign territory. Chamberlain's Ltd., of Australia, was organized in 1908; Chamberlain's Medicine Co., Ltd., of Canada, in 1911; Chamberlain Medicine Co., Ltd., of Africa, in 1912;

Chamberlain Latin-American Co., in 1916; and the Dyola Dye Co., in 1916. The precise manner of effecting these incorporations is not clearly set forth in the record, but apparently each new corporation was capitalized with surplus of the original Chamberlain Medicine Co. No book entry was made on the books of any of the new companies in respect of good will and no stock of the new corporations was issued for good will. The stock was issued to the stockholders of the original company in proportion to their holdings. The new issues of stock were regarded by the stockholders as if they were stock dividends, and such stock, under an agreement of July 12, 1912, was held by D. S. Chamberlain as trustee for the stockholders of the Chamberlain Medicine Co. The business of all the corporations is conducted as one business, having the same officers and the same stockholders with the same proportionate holdings.

### DECISION.

The taxpayer's invested capital should be computed by excluding therefrom all amounts heretofore included as value of intangibles and the tax should be recomputed accordingly. Final decision will be made upon stipulation or upon motion of either party upon seven days' notice under Rule 50.

### OPINION.

STERNHAGEN : This appeal at the outset gave promise of presenting the interesting question of the application of the 25 per cent limitation in computing the invested capital of affiliated corporations. But in the light of the evidence that question disappears, for we can find no intangible property paid in for stock or shares, and hence no reason for considering the percentage limitation. The limitation is found in section 326, subdivision (a), paragraph (4), of the Revenue Act of 1918, which is:

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.

Before the percentage limitation can be applied, the intangible property claimed must be bona fide paid for stock or shares.

The taxpayer claims the entire amount of $111,199.57 shown on the balance sheet of December 31, 1893, as patents, copyright, trade-mark and good will. But this item appears on the balance sheet as a partial offset to an increase in capital stock—a capitalization of a self-assurance of value, a passive accretion to surplus, which had in no sense been "bona fide paid in for stock or shares." The original capital stock of $160,000 was expressly issued for all of the assets of the business including its patents, copyrights, trade-marks, and good will· That the balance sheet of December 31, 1892, does not disclose such assets in the list may indicate that there were none in fact or that they were included within the other designated items. It does not indicate that they existed and were omitted when the articles of incorporation expressly mentioned them as being among the considerations for the issuance of the capital stock. The fact

that the president of the corporation made an affidavit for use in this appeal in which he expressed the view that the partnership had a good will of a value of $140,000 is of little consequence.

Since the Commissioner has included in invested capital 25 per cent of the increased capitalization of $300,000, the invested capital should be recomputed by eliminating this amount, and the deficiency increased accordingly.